IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
LOU ANN SILK,                    )
                                 )
        Plaintiff,               )   Civil Action No. 04-1522
                                 )
    v.                           )   Judge Conti
                                 )   Magistrate Judge Caiazza
JO ANNE B. BARNHART,             )
Commissioner of Social           )
Security,                        )
                                 )
        Defendant.               )
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

For the reasons stated below, it is respectfully recommended that the District Court grant the Defendant's Motion for Summary Judgment (Doc. 8), deny the Plaintiff's Motion for Summary Judgment (Doc. 6), and dismiss this case with prejudice.

**II.  REPORT**

**BACKGROUND**

The Plaintiff Lou Ann Silk ("the Claimant") filed an application for disability insurance benefits ("benefits") with the Social Security Administration ("the SSA" or "the Administration") on May 6, 2003. *See* R. at 106. The purported onset date of her disability was November 20, 2002, when she allegedly became unable to work due to a foot bone spur, right rotator cuff tear, and kidney problems. *See* R. at 117.

The Administration denied the Claimant's application for

benefits.  *See* R. at 67-68, 71-74.  Thereafter, the Claimant requested a hearing, which was held before administrative law judge Melvin D. Benitz ("the ALJ") on March 11, 2004.  *See* R. at 78, 27-66.

On April 7, 2004, the ALJ issued a written decision denying the Claimant's application for benefits ("the ALJ's decision").  *See* R. at 14-26.  In support of his decision, the ALJ found that the Claimant had a combination of "severe" impairments, including "osteoarthritis, fibromyalgia, diabetes mellitus with foot problems, a hearing loss, status post rotator cuff repair, and depression . . . ."  *See* R. at 25.  The ALJ rejected the Claimant's "history of high blood pressure, high cholesterol, renal deficiency, missing knee cartilage, carpal tunnel syndrome, allergies, and headaches," however, as having no more than *de minimus* effect on her ability to work and were therefore "non-severe."  *See id.*  None of the impairments, however, met or equaled any of the relevant medical listings.  *See id.*

The ALJ further found the Claimant's allegations regarding her limitations were "not entirely credible" and that she retained the residual functional capacity ("RFC") to perform light work with certain modifications.  *See id.*  Specifically, the Claimant needed a job that: "allow[ed] her to sit-stand[;] . . . [was] low stress due to her depression[;] . . . [involved] low concentration, low memory, [and was] simple, and routine[;] . . .

[was] limited as to pushing and pulling in the right upper extremity[;] avoid[ed] heights, moving machinery, overhead reaching, temperature [and] . . . humidity extremes[;] . . . [did not] require keen hearing acuity due to her hearing loss[;] [and] [had] ready access to a bathroom." *See id.*

The ALJ concluded that there were a significant number of jobs in the national economy the Claimant could perform; she was therefore "not under a 'disability,' as defined in the Social Security Act." *See id.*

The Appeals Council for the SSA denied the Claimant's request for review. *See* R. at 4-6. On October 6, 2004, the Claimant filed this lawsuit pursuant to 42 U.S.C. Section 405(g), seeking judicial review of the ALJ's decision. *See generally* Compl. (Doc. 1). The parties have filed cross-motions for summary judgment, which are now ripe for adjudication.

**ANALYSIS**

In moving for summary judgment, the Claimant identifies several purported errors in the ALJ's decision. *See generally* Pl.'s Br. in Supp. of Mot. for Summ. J (Doc. 7; hereinafter cited as "Pl.'s Br.") at 12-20. Specifically, the Claimant argues that the ALJ: (1) failed to give controlling weight to a report of the Claimant's treating physician, Dr. Jennifer L. Sepp, D.O. ("Dr. Sepp"), that indicated greater limitations than those adopted by the ALJ; (2) based his decision upon a "defective hypothetical

which understates the severity of the [Claimant]'s impairments and excludes other impairments . . ."; (3) failed to apply "the appropriate Grid Rule which would necessitate a finding of 'disabled' based upon the [Claimant]'s age and limitations"; and (4) erred in concluding that the Claimant's renal deficiency and carpal tunnel syndrome were not severe impairments. *See* Pl.'s Br. at 12; *see also generally id.* at 12-20. Having reviewed the ALJ's decision and the evidence in the record, however, the undersigned concludes that the ALJ did not err and that his decision was otherwise supported by substantial evidence.

The ALJ properly rejected Dr. Sepp's opinion that the Claimant's impairments "prevent[ed] [her] from working full time at even a sedentary position" as unsupported by her own findings and inconsistent with the other medical evidence in the record. *See* R. at 22 (ALJ's decision explaining reasons for rejecting opinion); R. at 303 (check-box "Physical Capacities Evaluation" form filled in by Dr. Sepp dated December 12, 2003 indicating said limitations). Indeed, Dr. Sepp's narrative reports and clinical findings do not reasonably support her conclusion as to the severity of the Claimant's limitations. *Compare* R. at 303 *with* R. at 289 (Dr. Sepp's report dated April 10, 2003, noting that Claimant felt "good overall" and was "in good spirits"; examination otherwise unremarkable), R. at 287 (report from "routine visit" dated July 24, 2003, indicating that the Claimant

-4-

was "progress[ing] very well" from shoulder surgery and had no other symptoms), *and* R. at 308-309 (report dated November 12, 2003, noting some shoulder pain, prescribing medication for upper respiratory infection, and noting temporary physical restriction based on "post left bunion deformity repair").  Nor do the reports of the Claimant's other treating physicians support her argument.  *See, e.g.,* R. at 166-67, 258 (reports from Dr. Ian Katz, M.D. ("Dr. Katz"), observing positive recovery from rotator cuff surgery and that as of August 19, 2003, the Claimant had "virtually full range of motion, no pain, and excellent strength[;] . . . [f]rom a shoulder point of view, she [wa]s fit to return to work . . ."); R. at 259-67, 329-33 (reports from Dr. Sunil K. Soi, M.D. ("Dr. Soi"), diagnosing chronic kidney disease, but not identifying any related limitations); R. at 274-285, 335-38 (reports from Dr. Brian R. Oberneder, D.P.M., relating to Claimant's bunionectomy, opining that as of August 8, 2003, the Claimant could continue with "her daily activities"); R. at 300 (letter from Dr. David. J. Carney, M.D. ("Dr. Carney"), clearing Claimant for surgery, reporting that ultrasounds of Claimant's kidneys were negative and after six-month follow-up Claimant was discharged).

    The ALJ's rejection of Dr. Sepp's opinion is substantially supported and otherwise consistent with the law.  *See* <u>Hagner v. Barnhart</u>, 57 Fed.Appx. 981, 983 (3d Cir. Feb. 12, 2003) (an ALJ

-5-

may reject the treating physician's "conclusory" opinions that are "unsupported by the medical evidence") (citation omitted); Plummer v. Apfel, 186 F.3d 422, 430 (3d Cir. 1999) ("[A]n ALJ may reject a treating physician's opinion . . . on [the] basis of contradictory medical evidence . . ."); *see also* Macina v. Barnhart, 50 Fed.Appx. 842, 844 (9th Cir. Oct. 11, 2002) (ALJ's rejection of treating physicians opinions was proper where the ALJ's "findings set forth specific, legitimate reasons for doing so . . .") (citation and internal quotations omitted);

    The ALJ's hypothetical question to the vocational expert sufficiently accounted for all of the Claimant's limitations that find support in the record.  *Compare* R. at 60-61 (ALJ's hypothetical question) *with* Page v. Barnhart, 2004 WL 1946512, *3 (3rd Cir. Sept. 2, 2004) (stating well-settled principle that the ALJ's hypothetical question need only include those "impairments that are supported by the record") (citations omitted).  If there is any medical evidence to support the additional limitations identified in Claimant's brief, counsel has failed to cite it. *See* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *8 (E.D. Pa. Oct. 29, 2004) (plaintiff has the burden of show impairments that resulted in some functional limitation on his ability to do basic work); Pearson v. Barnhart, 2005 WL 1869745, *11 (D.N.J. Aug 9, 2005) ("[A] plaintiff bears the burden of demonstrating that [his] subjective complaints were substantiated by medical

-6-

evidence.") (citation and internal quotations omitted); *see also* Ricci v. Apfel, 159 F.Supp.2d 12, 18 (E.D. Pa. 2001) (scarcity of medical evidence of a disabling condition may constitute substantial evidence supporting an ALJ's decision).

The ALJ did not "transform" the Claimant's exertional limitations into sedentary work by restricting push/pull movements in her right upper extremity and by placing a sit/stand option limitation on her ability to do light work. *Compare* Pl.'s Br. at 15-17 *with* R. at 60-61 *and* Santiago v. Barnhart, 367 F.Supp.2d 728, 733 (E.D. Pa. 2005) ("There is nothing oxymoronic in finding that a plaintiff can perform a limited range of light work[:] [s]uch a finding is appropriate where . . . the evidence shows that the plaintiff can perform some, though not all, of the exertional requirements of a particular range.") (citations omitted). The ALJ properly followed the procedures set out in the social security regulations where a claimant's RFC "does not . . . fall neatly into either [the sedentary or light work] catagory[,]" seeking the assistance of vocational expert ("VE") to resolve the "difficult judgment" as to the catagorization of the Claimant's work ability. *See generally* Boone v. Barnhart, 353 F.3d 203, 210 (3d Cir. 2003) (citing SSR 83-12, *available at* 1983 WL 31253 (1983)). The VE considered the Claimant's limitations – including the ones listed above – and identified five jobs existing in the economy that the Claimant could perform. *See* R. at 61-63. Thus, the ALJ did not err in

-7-

concluding the same.  *Accord* Staggers v. Barnhart, 106 Fed.Appx. 104, 105 (3d Cir. 2004) (affirming ALJ's conclusion that substantial number of jobs existed for claimant who could perform light work with sit/stand option where ALJ "had the benefit of vocational expert testimony, particularly with respect to sit or stand option.").[1]

Because there is no basis for concluding that the Claimant could only perform sedentary work, Grid Rule 201.14 does not warrant a finding of "disabled" in this instance.  *See generally* 20 C.F.R. 404, Subpart P, App. 2, Guideline 201.00(g) (in cases involving an individual "approaching advanced age (age 50-54) . . . [who] ha[s] no past work experience or can no longer perform vocationally relevant past work and ha[s] no transferable skills, a finding of disabled ordinarily obtains.").

The ALJ's did not err in concluding that the Claimant's renal deficiency and carpal tunnel syndrome were non-severe.  *See* R. at 16-17.  Although the record demonstrates history of chronic kidney disease, there is no evidence that it restricted the Claimant's work activities in any meaningful way.  *Compare* R. at 259-67, 329-33 (Dr. Soi's reports diagnosing chronic kidney disease; no related limitations noted) *and* R. at 300 (Dr. David. J. Carney's letter reporting negative ultrasounds of Claimant's kidneys and discharging her) *with* Karahalias v. Barnhart, 2005 WL

---

[1] Boone is distinguishable from the instant case, and therefore does not control the outcome here.  *See id.,* 353 F.3d at 203; *see also* Staggers, 106 Fed.Appx. at 105 (concluding Boone did not apply in case where ALJ obtained proper VE testimony).

418681, *2 (E.D. Pa. Feb. 22, 2005) (stating that a claimant bears the burden of establishing that "her impairments significantly limit her physical or mental ability to do basic work activities and are, therefore, severe") (citations omitted) and *id.* ("[S]imply being diagnosed with an impairment does not mean that the impairment is severe.") (citation omitted). Morever, Dr. Sepp reported as of January 8, 2004, that the Claimant's renal deficiency was "now resolved secondary to analgesic use." *See* R. at 307.[2]

Nor is there is such evidence with respect to the Claimant's carpal tunnel syndrome. *See* R. at 16; *see also* R. at 166-339. In fact, beyond her own self-serving testimony, there is no evidence confirming that the Claimant even *has* that condition. See R. at 16; *see also* R. at 166-339.[3]

As the undersigned concludes that the ALJ's decision was proper and supported by substantial evidence, it should be affirmed.

### III.  CONCLUSION

For these reasons stated above, the District Court should

---

[2]  Dr. Katz's off-handed remark that "other medical issues" might prevent her from returning to work "such as her recent foot surgery and also a problem with her kidneys" does not suggest a contrary result.  There is no indication that Dr. Katz examined her with respect to this condition or that he was presenting an actual opinion as to the Claimant's limitations vis-a-vis her kidney condition.

[3]  There is no medical evidence corroborating a connection between the Claimant's self-reports of weakness, pain, numbness, and tingling in her hands with carpal tunnel syndrome.  *See* Pl.'s Br. at 19; R. at 305.

grant the Defendant's Motion for Summary Judgment (Doc. 8), deny the Plaintiff's Motion for Summary Judgment (Doc. 6), and dismiss this case with prejudice.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by September 14, 2005.  Response to objections are due by September 26, 2005.


August 29, 2005                       s/Francis X. Caiazza
                                      Francis X. Caiazza
                                      U.S. Magistrate Judge


cc:

Paul D. Kovac, Esq.
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

William J. Remaley, Esq.
Berger & Green
5850 Ellsworth Avenue
Suite 200
Pittsburgh, PA 15232